### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

09 MAR 30 PH 1:47

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

|  |  |
|---|---|
| DR. BARRY EPPLEY, MD, DMD, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| LUCILLE IACOVELLI, | ) |
|  | ) |
| Defendant. | ) |

1:09-cv- 0386 SEB -JMS

Cause No. _____

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING
## ORDER, INJUNCTIVE RELIEF AND DAMAGES

Dr. Barry Eppley, MD, DMD, by counsel, submits this Verified Complaint against

Lucille Iacovelli, seeking relief with respect to a longstanding campaign of false, disparaging and

defamatory articles, videos and other postings authored by Ms. Iacovelli and published by her on

the internet.  For an extended period of time, Ms. Iacovelli has created and posted on the internet

an extensive series of videos and written statements making numerous false and groundless

accusations against Dr. Eppley relating to a facelift surgery he performed on her in 2001, with

the conscious aim of damaging his reputation and injuring his business.  Her barrage of internet

disparagement has now escalated with her communication of an intent to commit suicide on

April 18, 2009, the eighth anniversary of the surgery, coupled with overt threats by her to utilize

that event to "destroy" Dr. Eppley.  Dr. Eppley has contacted appropriate mental health

authorities with respect to the planned suicide, and in this action seeks relief to prevent Ms.

Iacovelli from making further defamatory publications on the internet relating to her suicide

plans and Dr. Eppley's efforts to prevent her from carrying out those plans, as well as relief directed to the false and misleading statements about Dr. Eppley that she has already published.

In support of that relief, Dr. Eppley states:

### Parties, Jurisdiction and Venue

1.      Dr. Eppley is an individual who is a citizen of Indiana and maintains his residence in Westfield, Indiana. Dr. Eppley is a plastic surgeon who maintains a business with a primary address at Clarian North Medical Center, Suite 140, 11725 North Illinois Street, Carmel, Indiana 46032.

2.      Ms. Iacovelli is an individual who is a citizen of Massachusetts and maintains her residence in Forestdale, Massachusetts.

3.      The amount in controversy, exclusive of costs, exceeds $75,000.

4.      Jurisdiction is established in this case pursuant to 28 U.S.C. §§1331, 1332 and 1338 by virtue of the presence of a federal question, diversity of citizenship and claims arising under the federal trademark laws.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events at issue occurred in and have been otherwise directed at this judicial district.

### Background

6.      Dr. Eppley is a highly experienced and skilled plastic surgeon practicing in and around Indianapolis, Indiana. He holds degrees as both a Doctor of Medicine and a Doctor of Dental Medicine, is both a licensed physician and dentist, and is the only Indiana doctor who is board-certified as a specialist in both Plastic and Reconstructive Surgery and Oral and Maxillofacial Surgery. He previously served as a full tenured Professor of Plastic Surgery at the Indiana University at Indianapolis Medical School and as one of the principal plastic surgeons in

2

the Craniofacial and Cleft Program at Riley Hospital for Children, where he performed thousands of surgeries and procedures to correct facial deformities. He has conducted extensive research in medical and surgical technology, has received numerous federal and private research grants, holds ten patents, and has lectured on plastic and maxillofacial surgery topics in 28 different countries. Dr. Eppley has also contributed to surgical literature with over 250 journal articles, 35 book chapters, and five books, including a handbook entitled "Essentials of Maxillofacial Surgery" and a co-authored textbook, "Maxillofacial Trauma and Esthetic Reconstruction."

7.    In 2006, Dr. Eppley opened his own cosmetic surgery practice, Eppley Plastic Surgery and Anti-Aging Strategies, and has continued operating that business through the present time. Dr. Eppley's private practice has been successful, and he has treated and performed a variety of procedures successfully on numerous patients. Through his skill and patient care, Dr. Eppley has fostered and cultivated substantial personal and business goodwill and a reputation for excellence in the medical community and in the market for cosmetic surgery and related services. In conjunction with his private practice, Dr. Eppley co-founded Ology spas, a hospital-based spa concept combining Eastern ayurvedic healing methods with traditional Western medicine. He is a co-owner of Meridian Plastic Surgery Center, an outpatient surgical facility, and his business also includes sales of a wide variety of products offered through Eppley Surgery Recovery Center and Eppley Skin Care Product Center. His various and related business activities are described in a number of websites that he has developed and maintains, including www.eppleyplasticsurgery.com, www.ologyspa.com, www.recoverycentermd.com, www.4plasticsurgeons.com, www.eppleybreastaugmentation.com, www.eppleyfacelift.com, www.eppleyliposuction.com, www.eppleyrhinoplasty.com, and www.eppleytummytuck.com,

and he authors and maintains an extensive blog at www.exploreplasticsurgery.com. He has also uploaded numerous videos and postings on interactive internet sites such as www.youtube.com and www.viddler.com, and has extensively utilized the internet in marketing his name and business. In addition, Dr. Eppley is the host of a weekly radio show, "Doc Chat."

8.      Dr. Eppley has invested considerable time, effort and expense in marketing, advertising and promoting his business, his name and his reputation as a skillful and trustworthy provider of high quality cosmetic surgery procedures and related goods and services. In August 2008, Dr. Eppley filed an application with the United States Patent and Trademark Office for registration of his name, "Dr. Barry Eppley," as a trademark on the Principal Register. Upon examination, his application was found to be entitled to registration and was published for opposition pursuant to 15 U.S.C. §1062(a) on January 20, 2009. Dr. Eppley has not received notice of any opposition, nor any request for an extension of time to file an opposition, filed within the thirty-day period allowed under 15 U.S.C. §1063(a) or at any time thereafter, and the online records of the Patent and Trademark Office do not reflect the filing of any such opposition or request for extension in connection with Dr. Eppley's application. Accordingly, Dr. Eppley is now entitled to registration of his trademark "Dr. Barry Eppley" pursuant to 15 U.S.C. §1063(b), and he is currently awaiting the issuance of a certificate of registration.

9.      On April 18, 2001, Dr. Eppley performed a facelift surgical procedure on Lucille Iacovelli, a resident of Massachusetts who came to Indiana for the surgery. The procedure was performed at Meridian Plastic Surgery Center in Indianapolis.

10.     Several years earlier, in 1997 and 1998, Ms. Iacovelli had had facelift, blepharoplasty and rhinoplasty procedures performed by other surgeons at Massachusetts General Hospital in Boston, Massachusetts. Ms. Iacovelli was dissatisfied with the results of

those procedures, and, following consultation and examination, she engaged Dr. Eppley to perform a full facelift and blepharoplasty procedures. Unknown to Dr. Eppley at the time, Ms. Iacovelli asserted a variety of unfounded accusations against the doctors involved in the prior surgeries in Massachusetts and began a pattern of harassing communications and disparaging internet postings directed against those doctors.

11.     The surgical procedures performed by Dr. Eppley on Ms. Iacovelli were of a type that he had performed successfully on numerous occasions and as to which he was highly experienced. In performing the surgery on Ms. Iacovelli, Dr. Eppley did not encounter any complications or unusual difficulties, and when he completed the procedure she was in satisfactory condition. In all respects, Dr. Eppley performed the surgery on Ms. Iacovelli with skill and in full conformance with the customary standard of care and his own high standard of quality. He did not commit any errors, engage in any malpractice or negligence, or otherwise fail to meet any duty of care in connection with the surgery on Ms. Iacovelli.

12.     Following the surgery, Ms. Iacovelli began expressing dissatisfaction with the results. She complained of pain, difficulty breathing, ringing in the ears and decreased ability to extend her neck, lift her head and close her mouth. She blamed those reported symptoms on the surgery performed by Dr. Eppley. She accused personnel at Meridian Plastic Surgery Center of trying to kill her, stopped payment on the funds to pay for the surgery, and demanded additional information and further surgery from Dr. Eppley. For nearly an entire year, Dr. Eppley tried repeatedly to address her concerns and reason with her. She nevertheless began to send hostile and threatening letters and e-mails to Dr. Eppley and Meridian Plastic Surgery Center, and she also began to publish web pages on the internet describing her experience as a horrifying ordeal.

She further engaged in similar conduct directed against the doctors involved in her previous surgeries in Massachusetts.

13.     Ms. Iacovelli's assertions that the surgery performed by Dr. Eppley caused her reported pain and disabilities are completely unfounded.  Dr. Eppley performed the surgery competently, skillfully and without incident.  That surgery would not and did not result in the type of symptoms she has described.  Ms. Iacovelli has been examined by other doctors, who have concluded that she has no physical abnormalities or trauma that would account for her reported symptoms.  Ms. Iacovelli has responded by alleging a conspiracy of silence by which the medical community has been protecting Dr. Eppley and the surgeons who performed her earlier surgeries.  She did not at any point commence any malpractice action against Dr. Eppley, and has admitted she was unable to find an expert who would testify that Dr. Eppley committed any errors in the surgery.  As she stated in a website posting, "according to the 'experts' I consulted, there is nothing wrong with me."

14.     Despite the absence of any physical cause for her reported symptoms, Ms. Iacovelli has persisted for eight years in asserting that she is unable to breathe normally and is unable to swallow, close her jaw or hold her head upright in a normal fashion.  On her websites, she has graphically described the use of toaster tongs for a period of time to apply upward pressure from below either side of her jaw in order to hold her face in a position in which she asserted she could breathe and lift her head.  She further posted on the internet descriptions and images of a device by which she applied clamps or clips to the flesh below the sides of her jaw and attached them to a headband in order to pull the skin upwards, and in conjunction utilized hooks attached to a headband to pull her ears upward.  She reportedly stopped using that device eventually due to the tissue damage it inflicted, and posted graphic images on the internet of the

6

wounds she had inflicted on herself. She has also reportedly used a piece of wood to press

upward under her jaw for the same purpose. She has asserted that her condition has deteriorated

and that she only has the ability to sit in front of the computer and type.

15.     On a persistent basis since her surgery in 2001, Ms. Iacovelli has published and

posted on the internet a massive volume of web pages, videos, photographs, blogs and other

written statements regarding Dr. Eppley, her surgeries and her asserted pain and disabilities. She

has created and maintained a website "Losing Face" containing numerous entries that she

authored, has posted comments and blogs extensively on numerous interactive websites, and has

uploaded dozens of videos on websites such as www.youtube.com and www.vimeo.com. In

addition, she has sent thousands of e-mails, written many letters and made numerous phone calls

to Dr. Eppley and his business, on a persistent and constant basis ever since her 2001 surgery.

Her pattern of internet publication and harassing communications directed against Dr. Eppley

has continued over a period of nearly eight years, is consistent with the pattern of conduct

directed against the doctors involved with her earlier surgeries in Massachusetts, and has been

conducted by her in a dedicated fashion and on an enormous scale.

16.     Throughout her internet publications, Ms. Iacovelli has repeatedly and

persistently blamed Dr. Eppley for her reported symptoms and has condemned him using false,

scandalous and highly pejorative terms. She has unjustifiably and falsely accused Dr. Eppley of

negligence and malpractice, of making deceptive statements and "outright lies," of falsifying

medical records, of "blatantly neglect[ing] some basic rules of surgery," of having "faulty

judgment and technique," of operating while "impaired," and of "butchery." Time and again,

she has attributed her asserted pain and disabilities to alleged mishandling of her surgery by Dr.

Eppley, and has falsely and misleadingly stated that he is responsible for her suffering and in

7

time will be responsible for her death. Samples of the statements that Ms. Iacovelli has
published on the internet are attached hereto as Exhibits 1-12.

17.     Ms. Iacovelli's e-mail and other direct written communications to Dr. Eppley and
his business have similarly accused him falsely of misconduct using offensive terms such as
"butcher" and "murderer," and have included a variety of accusations, threats and demands. She
has proposed to remove her internet postings about Dr. Eppley in exchange for additional
surgical procedures or additional information, has boasted about the traffic performance of her
website and blog and the number of "hits" she has received from people searching his name, and
has touted her success in generating greater traffic through links and postings on popular sites.
Samples of the e-mails and correspondence sent by Ms. Iacovelli are attached hereto as Exhibits
13-18.

18.     Ms. Iacovelli's campaign of internet disparagement has caused substantial
damage to Dr. Eppley's reputation, goodwill and business. Because the professional services
provided by Dr. Eppley are primarily in the nature of elective medical procedures affecting the
appearance of the patient and entailing a significant financial commitment, and because those
services are generally not provided under emergency circumstances and are offered in a market
in which patients have competitive options, patients and potential patients can and do exercise
care and deliberation in selecting a surgeon or care provider, and can and do engage in research
and inquiry before making a decision. Patients and potential patients, accordingly, regularly and
routinely conduct internet searches to gather information before making such decisions. The
type of false statements made by Ms. Iacovelli about Dr. Eppley – falsely alleging negligence,
deception, incompetence and resulting pain and disfigurement – are calculated and, by her own
admission, are deliberately and intentionally designed by Ms. Iacovelli to persuade patients and

potential patients not to do business with Dr. Eppley. By her own admission, Ms. Iacovelli has

acted with a conscious motivation to drive individuals doing internet searches on Dr. Eppley

toward her disparaging web pages and other postings, and she has been successful in carrying out

that plan. As a consequence, Dr. Eppley has suffered substantial losses to his business and great

injury to his name and reputation.

19.     Ms. Iacovelli has gained a degree of fame and notoriety associated with her

unfounded complaints against Dr. Eppley. She was featured in a documentary "Plastic

Disasters" shown on Home Box Office in 2006, as one of three patients who had negative

experiences with plastic surgery. Ms. Iacovelli has stated that the filmmakers approached her

after reading her postings online, and she has expressed anger and betrayal at her depiction in the

documentary, which presents her as obsessive and features a doctor who examined her and found

no physical basis for her reported symptoms. In a number of more recent postings, she has stated

that she is working with a sympathetic writer, Rich Bergeron, who is writing a book about her.

She has also reported that she has been working for ten years with filmmaker/photographer Erika

Hahn in documenting her experiences.

20.     On March 18, 2009, Ms. Iacovelli sent an e-mail to Dr. Eppley noting that the

eighth anniversary of her 2001 surgery would be in 31 days and announcing that she intended to

commit suicide on that date. The e-mail states, in pertinent part:

> 31 days until the anniversary of your butchery causing me 8 years of physical
> torture and robbing me of 8 years of life. In 31 days you will be known as a
> MURDERER, not just a butcher. . . . There is enough money in the fund for my
> postmortem examination to prove that your handling of my operation was
> heinously negligent. . . . To you and Feldman: Your SILENCE will kill me,
> which WILL destroy you both... April 18.

A copy of the March 18, 2009 e-mail is attached hereto as Exhibit 19. She has subsequently sent

additional e-mails to Dr. Eppley, counting the days left until her planned suicide on April 18,

2009. Copies of those e-mails are attached hereto as Exhibits 20-22. One such communication stated, "You have ignored my voice in life. Silence will not follow my death." See Ex. 22.

21.    Ms. Iacovelli's internet publications have included references to her plan to commit suicide and publicize the event. One posting describes a "morbid scenario" in which she ties herself to a chair in a position in which she cannot breathe, predicting she would die within minutes even though every physician who has examined her has concluded "there is nothing wrong with me." See Exhibit 1, attached hereto. The same posting states, with emphasis in the original, "Should I resort to the above action, a video camera will capture the gruesome event, leaving no room for speculation regarding the truth of my claims." Id. In an April 2008 web posting, she stated, "I will not be silenced during my life time, and certainly not after my death." See Exhibit 23, attached hereto. In another posting dated February 2, 2009, Ms. Iacovelli stated, "If I cannot care for my needs by myself, I will end my own life while I am still able." See Exhibit 24, attached hereto. In an October 2007 open letter that she posted on the internet addressing a surgeon involved with her 1998 rhinoplasty procedure in Massachusetts, Ms. Iacovelli asserted that writer Rich Bergeron would "set the record straight" about her experiences despite an unhappy conclusion, and concluded, "If you and Dr. Eppley remain silent and do nothing to help me, I want people to know about your disregard for my appeal to help save my life before it is too late." See Exhibit 25, attached hereto.

22.    Concurrent with her recent e-mails to Dr. Eppley about her plan to commit suicide on April 18, 2009, Ms. Iacovelli has published similar statements on the internet. On March 21, 2009, she made a posting stating she had purchased twenty-six saris and planned to "wear every one of them at least once before leaving this life." See Exhibit 26, attached hereto. The following day, March 22, 2009, she stated, "It is time for me to cut my losses," and "This is not a

suicide message.  It is a statement of my decision to stop fighting for every breath."  See Exhibit

27, attached hereto.

      23.     In response to Ms. Iacovelli's announced plan to commit suicide on April 18,

2009, Dr. Eppley has alerted the appropriate mental health authorities in Massachusetts regarding

the suicide threat.  In light of her long history of disparaging statements about Dr. Eppley on the

internet, there is a strong probability that Ms. Iacovelli will seek to damage Dr. Eppley's

reputation and business further in reaction to his efforts to prevent her suicide and the filing of

this complaint, by authoring and publishing on the internet additional defamatory and derogatory

statements relating to Dr. Eppley.

### Count I: Defamation

      24.     Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-

23, inclusive.

      25.     Ms. Iacovelli has published written statements about Dr. Eppley that are false,

defamatory and highly injurious to his reputation, professional standing and good name.

      26.     Ms. Iacovelli, in publishing defamatory statements regarding Dr. Epply, has acted

with malice and deliberate intent to damage his reputation and business.

      27.     In publishing her defamatory and malicious statements regarding Dr. Eppley, Ms.

Iacovelli has acted without justification, in the absence of a good faith basis for her disparaging

assertions, and with actual knowledge of falsity or at very least in reckless disregard of the truth.

      28.     The defamatory, malicious and unjustified statements published by Ms. Iacovelli

regarding Dr. Eppley have included numerous false assertions directed to his professional

competence and ability to perform services effectively, thereby causing serious injury to his

reputation and business in his profession and employment.

29.    As a result of Ms. Iacovelli's defamatory publications, Dr. Eppley has suffered substantial losses and damages, including lost patients, lost revenue, lost business opportunities, impairment of professional stature, damage to reputation, increased expenses to correct the misstatements and counter the defamation, mental anguish and emotional distress.

## Count II: Trade Disparagement

30.    Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-29, inclusive.

31.    Ms. Iacovelli's defamatory, malicious and unfounded statements regarding Dr. Eppley have been published by her on the internet in a deliberate and calculated scheme to undermine Dr. Eppley's trade and business.

32.    Ms. Iacovelli has attempted to deter, and has succeeded in deterring, patients and potential patients from doing business with Dr. Eppley by making false and derogatory statements on the internet regarding Dr. Eppley and his business.

33.    Ms. Iacovelli has published her false statements injurious to Dr. Eppley's trade reputation and business goodwill without justification and despite actual notice that her accusations are unfounded.

34.    As a result of Ms. Iacovelli's misconduct, Dr. Eppley has suffered damage and injury to his trade, profession and business, including lost patients, lost revenue, lost profits, lost business opportunities and increased expenses to address and counter the disparagement.

## Count III: Harassment

35.    Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-34, inclusive.

36.     Ms. Iacovelli has engaged in a longstanding and persistent campaign directed to damaging Dr. Eppley's reputation and business by publishing on the internet a massive volume of web pages, videos and postings that contain false and defamatory statements regarding Dr. Eppley.

37.     In conjunction with her campaign of internet disparagement, Ms. Iacovelli has further sent thousands of e-mails and other direct communications and has made numerous phone calls to Dr. Eppley and his business, making a variety of unfounded complaints, accusations, threats and demands.

38.     Despite Dr. Eppley's reasonable efforts to address her concerns following the 2001 surgery (see, e.g., Exhibits 28-29, attached hereto), Ms. Iacovelli has persistently demanded additional information and additional surgical procedures, has proposed that she would remove her defamatory internet postings if her demands are met, and otherwise has threatened to make further defamatory internet postings if her demands are not satisfied.

39.     Ms. Iacovelli has engaged in unreasonable and outrageous conduct directed to harming Dr. Epply and his business unjustifiably and to coercing him to accede to her demands.

40.     Dr. Eppley has been reasonably alarmed and felt reasonably threatened as a result of the harassment by Ms. Iacovelli.

41.     Ms. Iacovelli has acted unlawfully and in violation of 18 U.S.C. §875(d), 47 U.S.C. §223(a)(1)(E), Ind. Code §35-45-2-2(a) and Ind. Code §35-45-10-1 et seq.

42.     Dr. Eppley has suffered losses and damages as a result of Ms. Iacovelli's harassment.

13

## Count IV: False Designations and Descriptions of Fact

43.      Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-42, inclusive.

44.      Dr. Eppley has invested considerable effort and expense in establishing goodwill in his name and in promoting his professional reputation as an experienced, skillful and highly competent provider of cosmetic surgery procedures and related services and goods.

45.      Dr. Eppley has achieved broad recognition and public acclaim as an experienced, skillful and highly competent practitioner in the medical community and in the market for cosmetic surgery procedures and related services and goods.

46.      Dr. Eppley, accordingly, has registered his name as a trademark in accordance with the federal trademark laws.

47.      Ms. Iacovelli has published on the internet numerous statements using the names "Dr. Barry Eppley," "Dr. Eppley" or "Eppley" in conjunction with false and misleading designations and false and misleading descriptions and representations of fact.  She has also created "tags" on a number of websites using Dr. Eppley's name, in order to drive traffic to her websites that contain false and misleading statements about Dr. Eppley.

48.      Ms. Iacovelli's false and misleading statements about Dr. Eppley are likely to cause and have caused public confusion regarding the connection between Dr. Eppley and Ms. Iacovelli and regarding Dr. Eppley's alleged conspiracy with other doctors and his business associates, and those false and misleading statements further have grossly misrepresented the nature, characteristics and quality of Dr. Eppley's services.

49.      Ms. Iacovelli's false and misleading statements about Dr. Eppley have been designed to tarnish and have tarnished Dr. Eppley's name, reputation and business.

14

50.     On information and belief, Ms. Iacovelli has acted with an intent and design to achieve publicity, fame and notoriety for herself, and thereby enhance the market for the planned book about herself and for other publications regarding her accusations and experiences.

51.     Ms. Iacovelli's false and misleading statements about Dr. Epply have been designed to harm and have harmed Dr. Eppley's business, and have caused losses and damages to Dr. Eppley and his business.

52.     Ms. Iacovelli has engaged in unlawful conduct in violation of the Lanham Act, and in particular in violation of Lanham Act §43, 15 U.S.C. §1125.

### Count V: False Light Publicity

53.     Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-52, inclusive.

54.     Ms. Iacovelli has published on the internet numerous false statements about Dr. Eppley that place him before the public in a false light.

55.     Ms. Iacovelli has made concerted efforts to publicize her false statements about Dr. Eppley and has succeeded in gaining widespread publicity.

56.     The false statements by Ms. Iacovelli regarding Dr. Eppley have been highly offensive and would be highly offensive to a reasonable person.

57.     Ms. Iacovelli has publicized her false statements about Dr. Eppley despite actual notice that her accusations are unfounded, and she has acted with knowledge of the falsity or at very least in reckless disregard of the truth.

58.     Ms. Iacovelli has publicized her false statements regarding Dr. Eppley despite actual notice that she was placing him in a false light, and has done so with knowledge of or at very least in reckless disregard of the false light.

59.     As a result of the false light statements publicized by Ms. Iacovelli, Dr. Eppley has suffered losses and damages.

### Count VI: Temporary Restraining Order and Injunctive Relief

60.     Dr. Eppley repeats and incorporates by reference the averments set forth in ¶¶1-59, inclusive.

61.     Ms. Iacovelli's announcement that she plans to commit suicide on April 18, 2009 raises an immediate risk of irreparable injury.

62.     Ms. Iacovelli's plan to commit suicide and publicize the event is contrary to public policy and is adverse to the public interest.

63.     In light of her suicide plans, there is substantial risk that prior notice of efforts to interfere may accelerate her timing and cause her to commit suicide or seriously injure herself.

64.     In light of her long history of internet disparagement directed against Dr. Eppley, there is a strong probability that Ms. Iacovelli will seek to react to efforts by him to interfere with her suicide plans by making a barrage of internet postings containing defamatory statements about Dr. Eppley.

65.     Dr. Eppley should not be placed in a position where his efforts to alert mental health authorities to a suicide threat and related efforts to seek judicial relief result in another wave of adverse publicity arising from false and defamatory statements by Ms. Iacovelli.

66.     There is a strong probability that prior notice to Ms. Iacovelli of Dr. Eppley's efforts to interfere with her suicide plans would result in further injury to Dr. Eppley's name and reputation as a result of additional defamatory postings on the internet by Ms. Iacovelli.

67.     The issuance of a temporary restraining order, followed by an injunction after notice and hearing, that prohibits Ms. Iacovelli from publicizing her planned suicide and

16

prohibits her from publishing disparaging statements about Dr. Eppley's efforts to interfere with her suicide plans would be reasonably calculated to reduce her incentive to carry out her plans, insofar as she would be on notice that the negative publicity against Dr. Eppley that she hopes to achieve by ending her life will not occur.

68.     The facts set forth in this Verified Complaint establish a substantial likelihood that Dr. Eppley will be successful on the merits of his claims.

69.     The potential damage to Ms. Iacovelli that may arise from the injunctive relief sought herein is far outweighed by the damage Dr. Eppley would suffer in the absence of injunctive relief.

70.     Dr. Eppley is entitled, without notice to Ms. Iacovelli, to a temporary restraining order prohibiting Ms. Iacovelli from publicizing her planned suicide and from publishing disparaging statements about Dr. Eppley's efforts to interfere with her suicide plans.

71.     Dr. Eppley is entitled, following notice and hearing, to preliminary and permanent injunctive relief prohibiting Ms. Iacovelli from publishing further defamatory statements about Dr. Eppley and requiring her to remove the defamatory statements about Dr. Eppley that she has already published on the internet.

WHEREFORE, Dr. Eppley respectfully prays that the Court enter judgment in his favor and against Ms. Iacovelli on all counts and provide the following relief:

a.     Enter a temporary retraining order without prior notice to Ms. Iacovelli prohibiting her and all those in concert and cooperation with her from publishing statements regarding her suicide or her intent to commit suicide and that refer directly or indirectly to Dr. Eppley, and further prohibiting Ms. Iacovelli and all those in concert and cooperation with her from publishing disparaging statements regarding Dr. Eppley's efforts to interfere with her

announced suicide plans, including his communications with mental health authorities and the judicial relief he is seeking in this action;

     b.     Enter preliminary and permanent injunctive relief, following notice, hearing and trial, containing the same prohibitions as the temporary restraining order, and further prohibiting Ms. Iacovelli and all those in concert and cooperation with her from publishing further defamatory statements about Dr. Eppley and requiring Ms. Iacovelli to remove or cause to be removed the defamatory statements about Dr. Eppley that she has previously published on the internet;

     c.     Award the damages suffered by Dr. Eppley as a result of Ms. Iacovelli's publication of disparaging statements and other misconduct; and

     d.     Provide such additional relief as may be appropriate in the premises.

### Verification

The undersigned hereby verifies under the pains and penalties of perjury that the foregoing factual representations are true and correct.

_____
Dr. Barry Eppley, MD, DMD

By his attorneys,

LEWIS & KAPPES

By: _____
Todd A. Richardson (16620-49)

LEWIS & KAPPES
One American Square, Suite 2500
Indianapolis, Indiana 46282
(317) 639-1210