**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

09 MAR 30 PM 1:48

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| **DR. BARRY EPPLEY, MD, DMD,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**LUCILLE IACOVELLI,** )<br><br>**Defendant.** ) | **1:09-cv-0386 SEB -JMS**<br>Cause No. _____ |

**BRIEF IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER**

Dr. Barry Eppley, by counsel, submits this brief in support of his Motion for Temporary Restraining Order, filed herewith. Dr. Eppley has received communications from the defendant, Lucille Iacovelli, announcing her plan to commit suicide on April 18, 2009, and to publicize her suicide in order to "destroy" Dr. Eppley. Dr. Eppley has alerted the appropriate mental health authorities of the suicide threat, and by this motion seeks a Temporary Restraining Order to prevent Ms. Iacovelli from carrying out her announced plan, pending a hearing with notice in which this Court can determine appropriate injunctive relief.

**A. Background**

As explained in more detail in the Verified Complaint submitted herewith, Dr. Eppley is a prominent and experienced plastic surgeon in Indianapolis. See Verified Complaint ¶¶1, 6-8. Ms. Iacovelli is an individual residing in Massachusetts. Id. ¶¶2, 9. On April 18, 2001, Dr. Eppley performed a facelift procedure on Ms. Iacovelli in Indianapolis. Id. ¶9. Dr. Eppley had performed similar surgeries many times successfully, Ms. Iacovelli's procedure occurred without

any complications or unusual difficulties, and Dr. Eppley did not commit any errors or engage in any malpractice in connection with that surgery. Id. ¶11.

Following the surgery, Ms. Iacovelli nevertheless began complaining of pain, difficulty breathing, ringing in the ears and restricted movement around the jaw. See Verified Complaint ¶12. The surgery performed by Dr. Eppley would not and did not result in those reported symptoms. Id. ¶13. Ms. Iacovelli has since been examined by other doctors, who have consistently found no physical abnormalities or trauma. Id. See Verified Complaint Ex. 2 at 4 (admitting doctor described symptoms as "psychotic and delusional"); Ex. 3 at 4 ("according to the 'experts' I consulted, there is nothing wrong with me").

Even though Dr. Eppley tried repeatedly for almost an entire year to address the concerns raised by Ms. Iacovelli (see Verified Complaint ¶12, Exs. 28-29), she began to send hostile and threatening e-mails and letters to Dr. Eppley and his business. Id. ¶¶12, 15, 17, Exs. 13-18. She further began to publish web pages and videos on the internet falsely accusing Dr. Eppley of causing her asserted pain and disabilities. Id. ¶¶12, 15, 16, Exs. 1-12. She has continued in that pattern of conduct through the present time, and has publicized her false accusations on the internet and made harassing communications to Dr. Eppley, in highly offensive and defamatory terms, with obdurate persistence and on a massive scale. Id.

On March 18, 2009, Dr. Eppley received an e-mail in which Ms. Iacovelli announced that she planned to commit suicide on April 18, 2009, the eighth anniversary of the facelift surgery performed by Dr. Eppley. See Verified Complaint ¶20, Ex. 19. She further threatened that her suicide would "destroy" Dr. Eppley. Id. The e-mail states, in pertinent part:

> 31 days until the anniversary of your butchery causing me 8 years of physical
> torture and robbing me of 8 years of life. In 31 days you will be known as a
> MURDERER, not just a butcher. . . . There is enough money in the fund for my
> postmortem examination to prove that your handling of my operation was

2

> heinously negligent. . . . To you and Feldman: Your SILENCE will kill me,
> which WILL destroy you both... April 18.

Id. She has subsequently sent Dr. Eppley confirming e-mails, counting down the days to her planned suicide. Id. ¶20, Exs. 20-22. Recent internet postings by Ms. Iacovelli have also referenced her impending suicide. Id. ¶¶21-22, Ex. 24 (February 2, 2009; "If I cannot care for my needs by myself, I will end my own life while I am still able."); Ex. 26 (March 21, 2009; describing purchase of 26 garments with plan to "wear every one of them at least once before leaving this life"); Ex. 27 (March 22, 2009; "It is time for me to cut my losses. . . . This is not a suicide message. It is a statement of my decision to stop fighting for every breath.").

Consistent with her threat to use her suicide as a means to "destroy" Dr. Eppley (see Verified Complaint ¶20, Ex. 19), Ms. Iacovelli has repeatedly expressed her intent to publicize her suicide as a final condemnation of the suffering she has falsely accused Dr. Eppley of causing. See id. Ex. 1 (describing suicide scenario; "Should I resort to the above action, a video camera will capture the gruesome event, leaving no room for speculation regarding the truth of my claims.") (emphasis in original); Ex. 22 ("You have ignored my voice in life. Silence will not follow my death."); Ex. 23 ("I will not be silenced during my life time, and certainly not after my death."); Ex. 25 at 6 (promising a sympathetic writer will "set the record straight regarding my experience, even if it does not have the happy conclusion he wanted").

In response to the suicide threat, Dr. Eppley has alerted the appropriate mental health authorities in Massachusetts. See Verified Complaint ¶23. He also commenced this action seeking injunctive relief regarding Ms. Iacovelli's plan to publicize her suicide in order to "destroy" him, and further seeking relief with respect to the numerous false and defamatory accusations about Dr. Eppley that she has published on the internet.

## B. Irreparable Harm

Ms. Iacovelli's announced plan to commit suicide on April 18, 2009 and publicize that event in an effort to "destroy" Dr. Eppley would inflict irreparable harm on Dr. Eppley as well as herself. Even though Dr. Eppley did not commit any error in connection with the surgery he performed on Ms. Iacovelli, and even though a number of doctors have independently confirmed there is nothing physically wrong with her, Ms. Iacovelli's planned suicide and accompanying publicity would directly associate Dr. Eppley with a patient's suicide in the public eye. Not only would she be publicly blaming Dr. Eppley for her suicide in a false and misleading fashion, thereby escalating the impact of her baseless accusations, but in addition she would be likely to gain notoriety for an internet-publicized suicide and thereby greatly expand the audience for her defamatory internet postings.

The surgical procedures that Dr. Eppley performs are primarily in the nature of elective surgery, as to which prospective patients routinely make decisions with care and deliberation. The publicized blow to Dr. Eppley's reputation that Ms. Iacovelli plans would irreparably injure his status as a skillful and reliable surgeon, in a manner that post-infliction measures would be insufficient to overcome.

The issuance of injunctive relief prohibiting Ms. Iacovelli from publicizing her suicide plans may well, in itself, deter her from proceeding with the intended suicide. If she is placed on explicit notice that she will be unable to publicize her suicide, and hence will not be able to achieve the negative publicity against Dr. Eppley that she plans to use to "destroy" him, her incentive to carry out those plans will be greatly diminished.

Dr. Eppley's efforts to alert mental health authorities to the suicide threat and to seek judicial relief in order to interfere with Ms. Iacovelli's plan to publicize her suicide, even if

4

successful in preventing her suicide, raise substantial risk that Ms. Iacovelli will launch a fresh wave of internet postings with false and defamatory statements about Dr. Eppley. In light of her long history of making false accusations against Dr. Eppley on the internet, there is every reason to expect that she will react to his communications with mental health authorities and the initiation of this legal action by publishing a barrage of outraged postings on the internet.

Dr. Eppley, accordingly, has been placed in an untenable position in which his efforts to interfere with Ms. Iacovelli's plans to publicize her suicide can be expected, absent injunctive relief, to result in new and intensely adverse publicity by Ms. Iacovelli inflicting additional harm to his reputation. An appropriate temporary restraining order, therefore, would prohibit Ms. Iacovelli from attempting to publicize both her planned suicide and Dr. Eppley's efforts to interfere with those plans.

### C. Reasons for Not Providing Notice

Ms. Iacovelli has announced a plan to commit suicide on April 18, 2009. By alerting mental health authorities in Massachusetts and commencing this action, Dr. Eppley seeks to prevent her suicide and interfere with her related publicity plans. Providing prior notice to Ms. Iacovelli would be inconsistent with those objectives.

If Ms. Iacovelli were given advance notice of Dr. Eppley's efforts to interfere with her plans, she could react by accelerating her announced timetable and committing suicide before April 18, 2009, so as to achieve her objective before she can be stopped. In addition, if given prior notice, Ms. Iacovelli can be expected to retaliate by publishing defamatory postings about Dr. Eppley's efforts on the internet, before this Court would be able to determine that she should be enjoined from doing so.

Ms. Iacovelli is in a suicidal and unbalanced state of mind, and she admits to a desire to "destroy" Dr. Eppley as a misguided act of revenge. Under these circumstances, the giving of prior notice would be likely to undermine the efficacy of the injunctive relief being sought in this action.

### D. Likelihood of Success on the Merits

The sworn statements set forth in the Verified Complaint, with the supporting exhibits, demonstrate a strong likelihood that Dr. Eppley will be successful in establishing his right to relief on the merits of his claims. The record shows that Ms. Iacovelli has published numerous false and misleading statements about Dr. Eppley, without justification and despite independent confirmation by multiple doctors that there is nothing physically wrong with her. She has further engaged in a relentless pattern of harassing communications, culminating in the recent suicide threat and corresponding plan to "destroy" Dr. Eppley. Her many published misstatements and campaign of internet disparagement have injured Dr. Eppley's reputation and business and have tarnished the goodwill associated with his trademarked name.

Ms. Iacovelli's misconduct has been in violation of several statutory provisions, including 18 U.S.C. §875(d) (prohibiting any effort to extort "any money or other thing of value" by communicating "any threat to injure the property or reputation" of another), 47 U.S.C. §223(a)(1)(E) (prohibiting repetitious communications for purpose of harassing any person), Ind. Code §35-45-2-2(a) (prohibiting harassing communications), and Ind. Code §35-45-10-1 et seq. (prohibiting stalking and harassment). Insofar as Dr. Eppley has established trademark rights in his name under federal law (see Verified Complaint ¶8), Ms. Iacovelli's pervasive use of his name in conjunction with false and misleading descriptions of fact, in a concerted effort to drive

trade away from him and to enhance her own fame and notoriety, has further violated Lanham Act §43(a), 15 U.S.C. §1125(a).

The record here provides ample basis for relief on Dr. Eppley's claims for defamation, trade disparagement, harassment, false descriptions of fact, false light publicity and injunctive relief. See Felsher v. University of Evansville, 755 N.E.2d 589 (Ind. 2001) (holding former professor's internet disparagement of university supported relief under a variety of tort theories); Newman v. Jewish Community Center Association, 875 N.E.2d 729, 734-35 (Ind. App. 2007), transfer denied, 891 N.E.2d 42 (Ind. 2008) (reciting elements of defamation); Lovings v. Thomas, 805 N.E.2d 442, 445-46 (Ind. App. 2004) (reciting elements of false light publicity).

### E. **Balance of Harms**

The balance of harms in this case weighs heavily in favor of the temporary restraining order sought by Dr. Eppley. The requested relief would not impose significant hardship on Ms. Iacovelli, who would simply be prevented from committing suicide in an effort to damage the reputation of Dr. Eppley and, at most, would have to delay plans to use her suicide to generate negative publicity concerning Dr. Eppley. By contrast, in the absence of injunctive relief, Dr. Eppley stands to suffer irreparable injury to his reputation and business, arising from Ms. Iacovelli's announced intent to associate his name with her suicide in the public eye.

The temporary restraining order sought herein would properly serve to maintain the status quo, pending further determination by this Court on the merits. Ms. Iacovelli would simply be prohibited from attempting to publicize a suicide which has not yet taken place and may yet be prevented, and from publishing new disparaging statements about Dr. Eppley's efforts to interfere with her plans to publicize her suicide.

### F.  Public Interest

Ms. Iacovelli's plans to commit suicide and to use that event to gain publicity for her false and defamatory accusations against Dr. Eppley are contrary to the public interest.  The efforts by Dr. Eppley to prevent her from carrying out her announced suicide and to interfere with her plan to achieve corresponding publicity are supported by sound public policy and are entirely consistent with the public interest.

### G.  Scope of Temporary Restraining Order

The injunctive relief ultimately sought by Dr. Eppley, on a preliminary and permanent basis, will include removal from the internet of all the false and defamatory web pages, videos and other postings that Ms. Iacovelli has already published about Dr. Eppley.  In this motion seeking a temporary restraining order, however, Dr. Eppley requests only that Ms. Iacovelli be prohibited from publicizing her suicide plans and from publishing disparaging statements about his efforts to interfere with those plans.  That limited relief is necessary and appropriate to maintain the status quo, pending a later determination by the Court, following notice and hearing, on the further relief sought by Dr. Eppley in this action.

In her internet postings, Ms. Iacovelli has stated that she has been working with a writer, Rick Bergeron, who is writing a book about her and will "set the record straight" after her story reaches an unhappy conclusion.  See Verified Complaint ¶¶19, 21, Ex. 23 at 9, Ex. 25 at 6.  She has also stated that a sympathetic filmmaker/photographer, Erika Hahn, has been assisting her for a decade in documenting her asserted pain and disabilities.  Id. ¶19, Ex. 10 at p.7 of 8, Ex. 12.  There is good reason for concern, therefore, that Ms. Iacovelli and her associates may attempt to circumvent any order by this Court prohibiting publicity of her suicide plans through the use of intermediaries.  In accordance with Fed. R. Civ. P. 65(d)(2), therefore, the temporary restraining

order should enjoin not only Ms. Iacovelli herself, but also all those in active concert or participation with her.

## H. Security

24.     Rule 65(c) provides for the posting of security by the party seeking injunctive relief, in an amount "that the court considers proper" to compensate the opposing party if later found to be improperly restrained. By the express terms of that provision, the Court has broad discretion in setting the amount of any security. In this case, Ms. Iacovelli will not suffer any discernable financial hardship if temporarily enjoined from publicizing her suicide plans. The Court, therefore, should not require the posting of any security by Dr. Eppley. In the alternative, in the event the Court concludes that some security is appropriate, the Court should direct that Dr. Eppley post security only in the nominal amount of $100.

WHEREFORE, the relief sought in Dr. Eppley's Motion for Temporary Restraining Order should be granted and the Court should enter a Temporary Restraining Order in the form submitted herewith, or alternatively in such form as the Court may find appropriate.

Respectfully submitted,

LEWIS & KAPPES

By: _Todd A. Richardson_

Todd A. Richardson (16620-49)

Counsel for Plaintiff, Dr. Barry Eppley

LEWIS & KAPPES
One American Square, Suite 2500
Indianapolis, Indiana 46282
(317) 639-1210

9