UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DR. BARRY EPPLEY, MD, DMD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:09-cv-386-SEB-JMS |
| vs. | ) | |
| | ) | |
| LUCILLE IACOVELLI, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING PRELIMINARY INJUNCTION**

This cause is before the Court on the Motion for Preliminary Injunction [Docket No. 12], filed by Plaintiff, Dr. Barry Eppley ("Dr. Eppley") on March 31, 2009. Following notice to the parties, a hearing was held to address the merits of the motion on April 17, 2009, at 2:00 p.m. The Court, having considered the Plaintiff's unopposed motion for preliminary injunction and all proceedings relating to such motion, and being duly advised, now finds that such motion should be GRANTED. A separate and specific document consisting of the Preliminary Injunction is being issued concurrent with this Entry.

*Factual Background*

Plaintiff, Dr. Eppley, is a Board certified plastic surgeon practicing in Indianapolis, Indiana. Defendant, Lucille Iacovelli, is an individual residing in Massachusetts. On April 18, 2001, Dr. Eppley performed a revision facelift procedure on Ms. Iacovelli in

Indianapolis. Dr. Eppley had performed similar surgeries on many previous occasions, and, according to him, Ms. Iacovelli's procedure culminated successfully and without error. Dr. Eppley also states that recovery was similarly successful and typical, apart from her behavior toward Dr. Eppley.[1] Following the surgery, Ms. Iacovelli nonetheless began complaining of pain, difficulty breathing, ringing in the ears, and restricted movement around the jaw. Ms. Iacovelli has since been examined by other doctors, who have consistently found no surgery-related abnormalities that would lead to these symptoms.

Dr. Eppley attempted for nearly a year to address Ms. Iacovelli's problems,[2] but in response Ms. Iacovelli began to send threatening emails and letters to Dr. Eppley at his home and business. She further began to publish numerous web pages and videos accusing Dr. Eppley of causing her ailments. She continues to engage in these postings,

---

[1] Furthermore, Dr. Eppley has presented evidence demonstrating that no ailment similar to the one claimed by Ms. Iacovelli has ever been recorded in scientific literature related to plastic surgery. He has introduced further evidence indicating that this ailment was nearly an impossible result of the facelift surgery performed, and that if such a problem had occurred, her condition would have improved, not deteriorated, over time. Dr. Eppley offers this evidence as an expert. Dr. Eppley graduated from the University of Pennsylvania Dental School and the Washington University in St. Louis Medical School, where his focus was in oral/maxiofacial surgery. He worked as an assistant professor, and then tenured professor, at the Indiana University Medical School for over a decade. While there, He was a practicing plastic surgeon, and a principal in the cleft lip program at Riley Hospital. Since 2006, he has been in private practice in his own business, which has locations in the professional office buildings near Clarian North Hospital in Carmel, Indiana, and Clarian West Hospital in Avon, Indiana. He has published 250 professional peer-reviewed articles, 35 book chapters, and two textbooks. He has held private and National Institute of Health grants, and holds nine U.S. and international patents. Dr. Eppley is Board Certified in plastic surgery and maxiofacial surgery.

[2] His attempts included numerous calls and emails, in which he sought to communicate with her about addressing the problems that she perceived.

which, upon the record before the Court, appear to be false.[3]

On March 19, 2009, Dr. Eppley received an email in which Ms. Iacovelli announced that she planned to commit suicide on April 18, 2009, the eighth anniversary of her surgery. She threatened that she intended to stage her suicide in such a way that it would "destroy" Dr. Eppley. She has subsequently sent emails counting down the days to April 18 and her planned suicide. She has further communicated to him her intent to publicize her suicide in an attempt to further associate her troubles with him and "set the record straight." See Exhibit 25 [Email from Iacovelli to Eppley] at 6.

In response to the suicide threat, Dr. Eppley alerted the mental health authorities in Massachusetts.[4] He also commenced this action on March 30, 2009.

Dr. Eppley testified that without the entry of a preliminary injunction he will continue to suffer irreparable harm in the form of diminished earnings, increased expense relating to efforts to negate the effect of false, defamatory email and internet transmissions and postings by the Defendant and her agents, and in injury to his professional standing and reputation. In addition, he will continue to suffer emotional effects from the unfounded, unjustified, unfair attacks on his standing in the community.

---

[3] Dr. Eppley testified at length about the falsity of these statements.

[4] Dr. Eppley testified that he contacted Massachusetts public health officials solely for the purpose of informing them of a potential suicide threat. He did not request that those officials take Ms. Iacovelli into custody involuntarily, nor did he make any other requests of those officials. He likewise had no control over whether and how such officials would respond to the information.

## *Legal Analyis*

### *I.     Standard of Review*

A party seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  See Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, - - U.S. - - (2008) (holding that irreparable harm must be "likely," not merely "possible").  "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied."  Coronado v. Valleyview Public School Dist. 365-U, 537 F.3d 791, 794-95 (7th Cir. 2008) (citing Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006)).

### *II.    Discussion*

*A.     Likelihood of Success on the Merits*

Dr. Eppley contends that Ms. Iacovelli is in violation of numerous statutes, state and federal, as well as state law torts.  We address the likelihood of success on the merits of those claims below:

First, Dr. Eppley argues that Ms. Iacovelli has violated 47 U.S.C. § 223(a)(1)(E),

which prohibits repetitious harassing communications. The allegations thus far leveled against Ms. Iacovelli, and the evidence supporting those allegations, demonstrate that Ms. Iacovelli has likely violated 47 U.S.C. § 223(a)(1)(E). This law is applicable so long as prohibiting the speech in question does not violate the First Amendment (in which case, the statute is unconstitutional as applied). See United States v. Popa, 187 F.3d 672 (D.C. Cir. 1999). As explained, *supra*, Ms. Iacovelli's speech is of low constitutional value because it is marked by falsehood and may be commercial in character. Therefore, it is afforded minimal First Amendment protection, and does not stand as a bar to Dr. Eppley's likely success on his claim under this statute.[5]

Dr. Eppley also contends that Ms. Iacovelli is in violation of 18 U.S.C. § 875(d), which prohibits efforts to extort money or other things of value by threat to reputation. As the record before the Court demonstrates, Ms. Iacovelli and her associates have threatened to use pressure from internet and media publicity to coerce a settlement from Dr. Eppley. Based on this showing, Dr. Eppley is likely to succeed on this claim as well.

Dr. Eppley also brings a claim under Indiana Code § 35-45-10-1, which prohibits stalking and harassment. Because Ms. Iacovelli has engaged in a pattern of harassment directed at Dr. Eppley, and, because her statements are not constitutionally protected, her actions fit into the statutory definition of "stalk." Thus, Dr. Eppley is likely to succeed on

---

[5]Eppley brings a separate but similar state law claim under Indiana Code § 35-45-2-2(a), which also prohibits harassing communications. His claim is likely to succeed under this statute for the same reasons.

this claim as well.

Dr. Eppley also argues that Ms. Iacovelli has committed the tort of "false light." Under Indiana law,

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Lovings v. Thomas, 805 N.E.2d 442 (Ind. Ct. App. 2004). The record before the Court demonstrates that Ms. Iacovelli has made numerous false and offensive statements about Dr. Eppley on public websites. Based on this showing, Dr. Eppley is likely to succeed on the merits of his false light claim against Ms. Iacovelli.

Dr. Eppley also brings a claim under trademark law, alleging that, having registered his name with the U.S. Trademark Office, "Dr. Eppley has established trademark rights in his name," and Ms. Iacovelli's use of his name in a misleading way in an effort to drive trade away from him and enhance her own fame violates the Lanham Act, 15 U.S.C. § 1125(a). Dr. Eppley has completed the registration procedures necessary to establish his business name (which is also his personal name) as a trademark under 15 U.S.C. § 1063(b), and that registration has been approved. Dr. Eppley received formal notification that he held a trademark in the mark "Dr. Barry Eppley" on January 26, 2009. Furthermore, Ms. Iacovelli's actions likely constitute a violation of this statute, which prohibits "false or misleading representation[s] of fact" relating to a name used in

commerce.  15 U.S.C. § 1125(a).  Therefore, Dr. is also likely to succeed on his trademark claim as well.

1.  First Amendment Issues

The likelihood that Dr. Eppley will succeed on the merits of his claims depends, to a large extent, on First Amendment issues.  If prohibiting Ms. Iacovelli's speech, broadly defined, will run afoul of the First Amendment, then he cannot succeed on his claims under 47 U.S.C. § 223(a)(1)(E), Indiana Code § 35-45-2-2(a), and Indiana Code § 35-45-10-1.  Furthermore, First Amendment issues play a significant role in the Court's decision to preliminarily enjoin Ms. Iacovelli's speech.  We therefore address the nature of her speech, and the protection afforded it, as it relates to Dr. Eppley's claims and the issuance of an injunction.

Courts must proceed cautiously when asked to enjoin speech.  "In determining the extent of the constitutional protection [of the First Amendment], it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication."  Near v. Minnesota, 283 U.S. 697, 713 (1931).  Moreover, it is universally accepted that the First Amendment guarantees of free speech protect equally as well against injunctions by courts as well as legislative restraints.  CBS v. Davis, 510 U.S. 1315 (1994).

However, not all speech is afforded the same protection under the First Amendment.  Specifically, there is "no constitutional value in false statements of fact."

7

Gertz v. Robert Welch, Inc., 418 U.S. 323, 338 (1974); see also Air Lines Pilots Ass'n, Intern. v. Dept. of Aviation of City of Chicago, 1993 WL 462834 (N.D. Ill. 1993) ("That defamatory speech is entitled to only limited protection under the First Amendment is well-known hornbook law.").[6] In this case, Dr. Eppley's claims focus on the falsity and harassment inherent in Ms. Iacovelli's statements. The record before the Court demonstrates that Ms. Iacovelli and her associates, through their publicity campaign, have made many public, intentionally misleading statements. Intentional lies do not materially advance society's interest in "uninhibited, robust, and wide-open" debate on public issues. New York Times Co. v. Sullivan, 376 U.S. 254, 265 (1964). Falsehoods belong to that category of utterances that "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942). Thus, such statements are afforded limited First Amendment protection.

Given the lesser First Amendment protection afforded statements like those made by Ms. Iacovelli, enjoining her from continuing to make such statements does not run afoul of the Constitution. As Indiana courts have held, when the speech enjoined is of lesser constitutional value because it is false and defamatory, and the injunction operates to address specifically that speech, the injunction passes constitutional muster under the

---

[6]Furthermore, "speech on matters of purely private concern is of less First Amendment concern." Carey v. Brown, 447 U.S. 455, 467 (1980).

First Amendment. See Barlow v. Sipes, 744 N.E.2d 1, 10 (Ind.Ct.App. 2001). Furthermore, when a defendant has engaged in an intentional "smear campaign" through defamatory internet publications, injunctive relief is proper. International Profit Associates, Inc. v. Paisola, 461 F.Supp.2d 672 (N.D.Ill. 2006) ("[I]t does not violate the principles of the First Amendment to enjoin defendants from continuing to include certain information on their website that is, on the record before the Court, demonstrably false and defamatory, and that [Plaintiff] has shown will cause it irreparable harm and against which it has no adequate remedy at law.")

Thus, in the case at bar, the First Amendment does not diminish the likelihood that Dr. Eppley will succeed on the merits of his claims, nor does it preclude equitable relief in the form of an injunction.

### B.     *Balance of Harms*

Ms. Iacovelli's efforts to "destroy" Dr. Eppley threaten to inflict irreparable harm to him. By directly associating her allegedly failed surgery with his business and person, the resultant damage to his reputation would likely be permanent. According to Dr. Eppley, he will also continue to suffer great and irreparable economic harm, and any post-infliction measures would not suffice to overcome the publicity.[7] Although Ms.

---

[7]Dr. Eppley testified that many of his patients have inquired about information they acquired from the websites created by Ms. Iacovelli and her associates. According to Dr. Eppley, patients and prospective patients cancel consultations and surgeries with him every month because of information they have received on websites created by Ms. Iacovelli and her
(continued...)

9

Iacovelli's ability to create publicity will be diminished, under the scope of the injunction, the only harm that will be done to her is the prevention of publicizing her defamatory statements and planned suicide in connection with Dr. Eppley's name. We conclude that the balance of harms favors Dr. Eppley.

*C.    Public Interest*

In large part, the public interest implicated in the case at bar is summarized in the First Amendment discussion above. Iacovelli's false statements do not materially advance society's interest in "uninhibited, robust, and wide-open" debate on public issues. New York Times Co., 376 U.S. at 265. Furthermore, Iacovelli's plan to publicize her suicide in an effort to defame Plaintiff is harmful and contrary to the public interest. Public policy therefore favors the issuance of an injunction.

*D. Construction of the Injunction*

The wording of a preliminary injunction is central to achieving its effect, for it is only through its wording that the parties (and others, if affected) will be on notice as to what conduct is enjoined or compelled.

> Rule 65(d) of the Federal Rules of Civil Procedure requires that the injunction set "forth the reasons for its issuance; . . . be specific in terms; . . . [and] describe in reasonable detail, and not by reference to the complaint or other

---

[7](...continued)
associates.

document, the act or acts sought to be restrained." See also Marseilles Hydro Power, LLC v. Marseilles Land and Water Co., 299 F.3d 643, 646 (7th Cir. 2002) (stating that any injunction issued by a federal district court must be detailed and specific to ensure proper enforcement through contempt proceedings or otherwise); PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 619 (7th Cir. 1998) (finding that an injunction must "be precise and self-contained, so that a person subject to it who reads it and nothing else has a sufficiently clear and exact knowledge of the duties it imposes on him that if he violates it he can be adjudged guilty of criminal contempt"). This requirement of specificity spares courts and litigants from struggling over an injunction's scope and meaning by informing those who are enjoined of "the specific conduct regulated by the injunction and subject to contempt." Marseilles Hydro Power, 299 F.3d at 647 (citing Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 84 F.3d 367, 371 (10th Cir. 1996)); Hispanics United of DuPage County v. Village of Addison, 248 F.3d 617, 620 (7th Cir. 2001).

Patriot Homes, Inc. v. Forest River Housing, Inc., 512 F.3d 412, 414-15 (7th Cir. 2008).[8]

### III. Conclusion

For all of the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is GRANTED. A separate and specific injunction order shall be issued accordingly.

IT IS SO ORDERED.

Date: 04/17/2009

Copies to:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[8] Furthermore, Defendant will not suffer any undue financial hardship as a result of the Preliminary Injunction, and therefore no security is required from Plaintiff.

11

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

LUCILLE IACOVELLI
3 Deer Hollow Road
Forestdale, MA 02644