UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DR. BARRY EPPLEY, MD, DMD, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:09-cv-386-SEB-JMS |
| | ) |
| LUCILLE IACOVELLI, | ) |
| | ) |
| Defendant. | ) |

**Order Finding Richard Bergeron in Contempt
of Court and Taking Sanctions under Advisement**

For the reasons explained in this Entry, the Court finds Richard Bergeron in indirect contempt of this Court's Orders and takes under advisement the issue of what sanctions to impose as a result.

**I. Background**

Plaintiff Dr. Barry Eppley is a citizen of Indiana who has a medical practice in Carmel, Indiana. Lucille Iacovelli is a former patient of Dr. Eppley's and a citizen of the Commonwealth of Massachusetts. Invoking both the court's diversity and federal question jurisdiction, and seeking both injunctive relief and damages, Dr. Eppley sued Iacovelli for defamation, trade disparagement, harassment, false-light publicity, and for violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, through her false designation and description of fact.

At the request of Plaintiff, a temporary restraining order ("TRO") was issued shortly after this action was filed on March 30, 2009. *Eppley v. Iacovelli*, 2009 WL 1035265 (S.D.Ind. April 17, 2009). The TRO was extended and then, after an evidentiary hearing, converted to a preliminary injunction on April 17, 2009. As a result of subsequent proceedings, in its Entry of December 2, 2009, the Court determined that defendant Lucille Iacovelli and those acting in concert with her were in contempt of the Preliminary Injunction. An appeal from that determination was docketed with the Seventh Circuit as No. 09-4141 but was dismissed thereafter for procedural reasons on February 4, 2010. The Court has recently determined that Iacovelli and those acting in concert with her have persisted in their refusal to comply with the Court's orders and because they remain in contempt of the Preliminary Injunction, further coercive measures were ordered by the Court to effectuate compliance with its prior orders. Proceedings involving Richard Bergeron resulted from his activities associated with the subject matter of the litigation.

The evidence supporting the findings of contempt reveals that Richard Bergeron is among the persons "acting in concert" with Iacovelli. The Court therefore issued a *Rule to*

*Show Cause* on December 31, 2009, ordering Mr. Bergeron to show cause why he, too, should not be found in contempt of this court's orders and sanctioned accordingly.

Mr. Bergeron filed a written response–his "Declaration"–to the *Rule to Show Cause* on January 19, 2010. On February 3, 2010, the Court set the matter for a hearing on February 16, 2010 to determine whether Richard Bergeron, although not a party to this action, should be held in contempt of the Court's orders. Mr. Bergeron was given the opportunity to attend and "offer evidence and argument concerning the matter being considered." In addition, Mr. Bergeron was ordered to disclose to the Court, no later than at the hearing, specific identifying information concerning certain computers.

Mr. Bergeron received notice of the hearing.[1] His written request to participate telephonically was denied on February 11, 2010. On the day of the hearing he caused a brief to be filed with the clerk. The plaintiff was present at the hearing in person by counsel. The defendant was not present and made no filing relative to the matters considered at the hearing.

The hearing was conducted as scheduled. Evidence was submitted and argument heard concerning the *Rule to Show Cause.* The issues addressed at the hearing and in this Entry are: (1) Is Mr. Bergeron in contempt of the Court's Orders? and (2) If he is in contempt, what sanctions are appropriate based on that contempt?

## II. Discussion

### A. Contempt

A hearing was scheduled on the *Rule to Show Cause* because due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature. *Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1127 (3d Cir. 1990); *In Re Grand Jury Proceedings,* 795 F.2d 226, 234 (1st Cir. 1986), *cert. denied, Caucus Distributors v. United States,* 479 U.S. 1064 (1987).

The power to punish for contempt is inherent in Article III judges. *Ex parte Robinson,* 86 U.S. 505, 510 (1873). Additionally, this Court, created by Congress, is invested by 18 U.S.C. § 401 with the power of civil contempt. Acts of contempt may be punished by fine or imprisonment, based on "[d]isobedience or resistance to its lawful writ, process, order,

---

[1]Various filings made in advance of the hearing–consisting of his motion to appear telephonically and his "brief in advance of sanctions hearing"–establish that Mr. Bergeron had ample advance notice of the time, place, and purpose of the hearing. Although his "brief in advance of sanctions hearing" mischaracterizes the nature of the hearing, the text of the document recognizes that a portion of the hearing of February 16, 2010, was indeed a "show cause hearing." A Deputy Marshal informed the Court at the commencement of the hearing that, because of recent wintry weather conditions in Massachusetts, the Marshals Service had not been able to deliver the Notice. The Court found that, even so, adequate notice had been received by Mr. Bergeron.

rule, decree, or command." 18 U.S.C. § 401(3); *see also Manez v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578 (7th Cir. 2008)(outlining the elements of civil contempt).

The essential legal elements of civil contempt were reviewed in the Entry of December 2, 2009, and have been established by clear and convincing evidence as to Mr. Bergeron.

- The first element is the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge. This element is present here, consisting of the fact of this Court's preliminary injunction issued on April 17, 2009, directing Iacovelli and those acting in concert with her to remove certain internet postings and cease making internet postings regarding Dr. Eppley, his attorneys, or this lawsuit. Mr. Bergeron had actual notice of the preliminary injunction no later than June 6, 2009, when he referenced the preliminary injunction in an e-mail to counsel for the plaintiff, stating: "You are going to have one strike against you already in the appeals court when they wipe out all your little bullshit victories so far by overturning the injunction." (Dkt. 100-2). "Actual notice" is "[n]otice given directly to, or received personally by, a party." **BLACK'S LAW DICTIONARY** 1164 (9th ed. 2009); *see also* 66 C.J.S. Notice § 4 ("notice is regarded in law as actual when the person sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it.").

- The second element is that the decree was in the movant's "favor." The preliminary injunction is a decree which sets forth in detail an unequivocal command to Iacovelli and those acting in concert with her to take the specified action relative to their internet postings and to refrain from additional postings of that character pending a final ruling on the merits of this litigation.

- The third element is that the alleged contemnor's conduct violated the terms of the decree, and that he had knowledge (at least constructive knowledge) of such violations. Internet sites and postings have been created and maintained in violation of the Court's orders. Mr. Bergeron is complicit in this ongoing activity, as his filings in the case plainly demonstrate. By way of example, Mr. Bergeron has admitted his violation(s) of this Court's orders in his Declaration in response to the Court's order to show cause why he should not be held in contempt. In his Declaration, Mr. Bergeron states:

  > 4. There is no doubt I have repeatedly violated the unconstitutional injunction, regardless of the pending appeal of the enforcement order on the injunction. . . .

  > 16. I have disobeyed this Court's orders, and I will continue to do so in the hopes of being illegally sanctioned so I can bring my own legal action in Massachusetts against Dr. Eppley, Judge Barker, Lewis & Kappes, and every attorney who worked on this case for the plaintiff

>        . . . .
>
>        17.  I have shown contempt for this Court, Dr. Eppley, Judge Barker,
>        and Lewis & Kappes, but not out of any desire to do evil.

The fact that Mr. Bergeron is not a party to this litigation is of no consequence relative to the question being considered here because, "[u]nder *Federal Rule of Civil Procedure* 65(d)(2), an injunction binds not only the parties to the injunction but also nonparties who act with the named party, and a court may find a nonparty in contempt if that person has actual knowledge of the court order and either abets the party named in the order or is legally identified with him." *Blockowicz v. Williams*, 2009 WL 4929111 (N.D.Ill. Dec. 21, 2009) (internal quotations and citations omitted); *see also Waffenschmidt v. MacKay,* 763 F.2d 711, 717 (5th Cir. 1985) ("An injunction binds not only the parties subject thereto, but also nonparties who act with the enjoined party.").

!       The fourth element of civil contempt is also satisfied here, in that the movant suffered harm as a result. Dr. Eppley has established that he has suffered, and continues to suffer, economic and other harm as a result of the refusal of Iacovelli and those acting in concert with her to abide by the Court's orders. Insofar as relevant to the issue addressed in this Entry, this harm consists of the negative and harmful effects of Bergeron's postings on the Internet and his refusal to remove previously posted information in violation of the Court's orders, to-wit, lost patients, lost revenue, damage to reputation, and costs incurred in attempts to offset the scandalous postings.

Based on the foregoing, the Court rules that Richard Bergeron is in indirect contempt of this Court's orders through his violation of the preliminary injunction. His violations do not partake of the character of the careless or inattentive, but of a person whose knowing, deliberate, repetitive, and wilful disobedience of the Court's orders demonstrates his disrespect for the Court's authority and orders. His disobedience is particularly troublesome because of his defiance.[2] This is evident through his written admission: "I have disobeyed this Court's orders, and I will continue to do so . . . ." His continued violation of the Court's orders is not permissible and cannot be condoned.

The Court also finds Mr. Bergeron in indirect contempt based on his failure to comply with the order issued to him in Part III of the Entry issued on February 3, 2010, wherein he was ordered to produce specified identifying information concerning certain computers. Again, as recited above, Mr. Bergeron received notice of the hearing and of his obligations with respect to it.

---

[2] Mr. Bergeron's contempt is of the Court's orders, as referenced in § 401(3). His contempt is not based on, nor is it fueled by, any sort of personal conflict with the assigned District Judge.

### B.  Sanctions

This Court has the authority, the duty, and the inclination to enforce its orders. *Peacock v. Thomas,* 516 U.S. 349, 355 (1996). "Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Id.* (citing *Riggs v. Johnson County,* 6 Wall. 166, 187 (1868)).

Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be "based on the nature of the harm and the probable effect of alternative sanctions." *Federal Trade Comm'n v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009).[3] In this case, the Court's orders set forth an unequivocal command to defendant Lucille Iacovelli and those acting in concert with her, including Richard Bergeron, to take specific action relative to their internet postings and to refrain from additional postings of that character pending a final ruling on the merits of this litigation. Bergeron's admitted and repeated violation of those orders is not excused by any of his arguments that those orders are ill-founded. His admitted and repeated violation of those orders will produce appropriate remedial and coercive measures. The law requires this: court orders must be enforced and not rendered hollow through disobedience and circumvention. The Court has invoked the All Writs Act, 28 U.S.C. § 1651, to abate the harm caused by the obduracy of Iacovelli and those in league with her, including Mr. Bergeron. The extent to which Third Party Providers of internet services remove postings, etc., when presented with the directions in the Entry of February 5, 2010, will dictate what additional measures, if any, will be required. For the present, therefore, as to Bergeron's contempt, the Court takes under advisement the matter of what specific sanctions are most appropriate.

### III.  Conclusion

Mr. Bergeron is in indirect contempt of court in the fashions specified in Part II.A. of this Entry. Appropriate and effective coercive sanctions will be ordered. By separate Entry, however, the Court has directed the plaintiff to report the extent to which voluntary compliance with the Court's orders of Third Party Providers of internet services and facilities has been secured. The Court will fashion sanctions as necessary after this report is received. This is not a final order, nor is it appealable in any other manner as a non-final order.

**IT IS SO ORDERED.**

Date:  02/25/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[3] For example, "[t]he paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command." *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 828 (1994).

Distribution:

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Todd Arthur Richardson
LEWIS & KAPPES
trichardson@lewis-kappes.com

Joseph Peter Rompala
LEWIS & KAPPES
jrompala@lewis-kappes.com

Lucille Iacovelli
3 Deer Hollow Road
Forestdale, MA 02644

Rich Bergeron
141 Green Street
Abington, MA 02351