**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| DR. BARRY EPPLEY, MD, DMD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LUCILLE IACOVELLI, )<br>)<br>Defendant. ) | No. 1:09-cv-386-SEB-DML |

**Entry Discussing Plaintiff's Motion for Summary Judgment**

Dr. Barry Eppley is a citizen of Indiana who has a medical practice in central Indiana. Lucille Iacovelli is a former patient of Dr. Eppley's and a citizen of the Commonwealth of Massachusetts. Invoking both the court's diversity and federal question jurisdiction, and seeking both injunctive relief and damages, Dr. Eppley has sued Ms. Iacovelli for defamation, trade disparagement, harassment, false-light publicity, and violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, through her allegedly false designation and description of fact. Dr. Eppley seeks resolution of his claims through the entry of summary judgment. Ms. Iacovelli opposes the motion for summary judgment, but does not rely on any evidentiary materials in doing so.

**I. Summary Judgment Standard**

The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). Succinctly stated, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998).

Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED.R.CIV.P.** Rule 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

The moving party has the initial burden to show the absence of genuine issues of material fact. *See Wollin v. Gondert,* 192 F.3d 616, 620 (7th Cir. 1999). "When a motion

for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." **FED.R.CIV.P.** 56(e)(2). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion."*Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). This burden cannot be met with conclusory statements or speculation, see *Cliff v. Bd. of Sch. Comm'rs,* 42 F.3d 403, 408 (7th Cir. 1994)(citing *McDonnell v. Cournia,* 990 F.2d 963, 969 (7th Cir. 1993)), but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1; *Brasic v. Heinemann's Inc., Bakeries,* 121 F.3d 281, 286 (7th Cir. 1997); *Foreman v. Richmond Police Dept.,* 104 F.3d 950, 957 (7th Cir. 1997); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994). In doing this, moreover, the non-movant may and should be expected to require compliance with applicable rules governing the presentation of information. *Waldridge,* 24 F.3d at 921-22.

## II. Undisputed Material Facts

The following statement of undisputed material facts is based on the standards set forth above. That is to say, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Ms. Iacovelli as the non-movant. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). As noted in the Entry issued on May 28, 2010, Ms. Iacovelli "failed to oppose the plaintiff's motion for summary judgment with evidentiary material and the deadline for her to have done so has passed. Accordingly, the factual assertions on which the plaintiff's motion for summary judgment is based and which are supported by the evidentiary record, are accepted as true for the purpose of resolving that motion."

    1.    Dr. Barry Eppley is a physician who is board-certified in plastic surgery and oral and maxillofacial surgery. Dr. Eppley graduated from the University of Pennsylvania Dental School and the Washington University in St. Louis Medical School, where his focus was in oral/maxiofacial surgery. Since 2006, he has been in private practice operating his own business, which has locations in the professional office buildings near Clarian North Hospital in Carmel, Indiana, and Clarian West Hospital in Avon, Indiana. Dr. Eppley has registered his name, Dr. Barry Eppley, as a trademark with the United States Patent and Trademark Office.

    2.    In 2001, Dr. Eppley performed a revisional facelift procedure on Ms. Iacovelli, a Massachusetts resident.

        a.    Eppley performed the facelift at the Meridian Plastic Surgery Center in Indianapolis. She had an uncomplicated recovery and left the surgery center without problems.

      b.      A few months after the surgery, however, Dr. Eppley became aware that Ms. Iacovelli had some complaints regarding her surgery. In particular, she complained that the surgery caused an airway obstruction and that she was having difficulty breathing.

      c.      Dr. Eppley has not encountered similar complaints from patients who have undergone the same procedure. He is unaware of any other facelift patients who have asserted breathing problems as a result of the surgery. No such problems have been reported in the medical literature. Other than Ms. Iacovelli's complaint, there has been not a single reported case of a facelift causing an airway obstruction in the history of plastic surgery, in the annals of medicine, or in the Index Medicus, the definitive literature of published articles.

      d.      The airway obstruction that Ms. Iacovelli complains of is not a possible physical result of a facelift revision surgery. First, the thin muscle in the neck that is tightened in a facelift serves only the function of giving shape to the neck. Regardless of how much it is tightened, it will not impact the airway, which is protected by the tongue, voicebox and other structures. In addition, a facelift does not last over time, and after eight years the appearance would return to the starting point. If there had been an effect on the airway, it would not get worse over time, but would improve. In her extensive internet publications on the subject, Ms. Iacovelli has not presented any medical evidence documenting any airway obstruction caused by the surgery performed by Dr. Eppley.

      3.      For approximately a year following the surgery, Dr. Eppley attempted to address Ms. Iacovelli's concerns. They communicated by telephone, mail, and e-mail during that time. Ms. Iacovelli sent Dr. Eppley numerous e-mails complaining about her surgery and characterizing him as a butcher or murderer. Sometimes using aliases, she would send him e-mails on a daily basis. Ms. Iacovelli has never filed a medical malpractice lawsuit against Dr. Eppley based on any of these complaints.

      4.      Since the surgery, Ms. Iacovelli has published a large volume of postings on various internet sites alleging that Dr. Eppley mishandled her surgery and caused her to suffer severe health problems, particularly breathing difficulties. She placed postings on complaint sites, maintained various blogs and websites, and posted videos on internet platforms, all blaming Dr. Eppley for her asserted post-surgical condition. In her internet publications, Ms. Iacovelli has noted that subsequent to the surgery performed by Dr. Eppley she consulted other physicians, who have concluded there was nothing physically wrong with her.

      5.      The internet writings, videos and images published by Ms. Iacovelli have harmed Dr. Eppley's reputation and caused him to lose patients and revenue. While Dr. Eppley does not know how many patients chose not to come to him for treatment due to Ms. Iacovelli's internet publications, it has not been uncommon for him to see a patient, schedule a surgery and then have the patient cancel the surgery presumably as a result of these internet publications. In addition, he and his staff are frequently asked about

Ms. Iacovelli's accusations. Dr. Eppley estimated that as a result of Ms. Iacovelli's internet publications, he has lost hundreds of thousands of dollars of income, and that he loses about one to two patients a month, not including those he has never seen in the first place. In addition to lost revenues from lost patients, Dr. Eppley has expended considerable time and effort and expense conducting his own internet campaign in an effort to counteract the internet publications by Ms. Iacovelli. He estimates the level of additional expense he has invested in reputation management, beyond the baseline expenses for maintaining a website and ordinary marketing, has been two to three thousand dollars per month.

6. During the course of this litigation, Ms. Iacovelli and others acting in concert with her have created additional websites and published additional writings and videos on the internet targeting Dr. Eppley's professional services. These materials have conveyed, among other things, representations that Dr. Eppley mishandled the surgery he performed on Ms. Iacovelli in 2001 and caused her to suffer severe health problems. These materials have also conveyed information concerning the litigation itself. Ms. Iacovelli and those acting in concert and participation with her and on her behalf have also inundated Dr. Eppley and his counsel with a large volume of communications threatening further and increased adverse internet publicity aimed at damaging the reputations of Dr. Eppley and his counsel unless the litigation is dropped or the claims otherwise withdrawn.

7. Among other techniques aimed at gaining publicity with respect to the accusations against Dr. Eppley, Ms. Iacovelli and her associates have at times utilized Dr. Eppley's name in making internet postings, in such a way as to make it appear that the postings were being made by Dr. Eppley. They have also incorporated Dr. Eppley's name into domain names and internet sites which they have utilized to publish content accusing Dr. Eppley of malpractice and of damaging the health of Ms. Iacovelli.

### III. Discussion

*Jurisdiction and Setting.* A court has subject-matter jurisdiction if it has the "authority to decide the case either way." *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913). Accordingly, "judges must consider jurisdiction as the first order of business." *Sherman v. Community Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440 (7th Cir. 1992), *cert. denied,* 114 S. Ct. 2109 (1994).

> Federal district courts are courts of limited jurisdiction . . . . Congress has conferred subject matter jurisdiction on the district courts only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331-32.

*Smart v. Local 702 Intern. Broth. of Elec. Workers,* 562 F.3d 798, 802 (7th Cir. 2009).

Ms. Iacovelli and those acting in concert with her have used the Internet as the medium through which to convey their damaging and disparaging statements and activities relating to Dr. Eppley.

*Federal Question Jurisdiction - The Lanham Act.* Dr. Eppley has legally protected interests in his name, likeness and identity. He has marketed himself and his services and expertise as a plastic surgeon extensively. He has also registered his name, "Dr. Barry Eppley," under the federal trademark laws. Ms. Iacovelli's efforts to divert trade from Dr. Eppley, to misuse Dr. Eppley's name in support of her own internet publications and to advance her own notoriety and fame, and to associate Dr. Eppley's name with false representations and designations violate the Lanham Act § 43(a).

To prevail on his claim for false designation of origin, Dr. Eppley must show, among other things, that he holds a protectable mark and that Ms. Iacovelli made commercial use of the mark or a similar mark in a manner that caused confusion in the minds of consumers about the origin of the goods or services in question. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 117 (2004).

Dr. Eppley has met this burden, and no reasonable trier of fact could conclude otherwise based on the evidentiary record. Ms. Iacovelli has utilized Dr. Eppley's name in tabs, links, websites and throughout her campaign of internet disparagement, with the conscious design of driving internet traffic away from Dr. Eppley's authorized websites and toward her own. Ms. Iacovelli and her associates have acted, at least in part, with a commercial purpose. The record indicates an effort to elevate Ms. Iacovelli to celebrity status by publicizing her as the "star" of an HBO documentary and to promote the market for the book about her that Mr. Bergeron is writing. Ms. Iacovelli, furthermore, has asserted that her internet publications are regarded by her as her primary occupation, and that she operates them on a "sole-proprietor" basis. It is apparent that Ms. Iacovelli has sought to enhance her fame and notoriety by associating her story and her defamatory message with Dr. Eppley's name. A desire to achieve derivative celebrity status by diverting the internet traffic arising from Dr. Eppley's trademarked name constitutes a calculated effort to take advantage of his name recognition in order to boost the status and attention paid to her "sole-proprietor" sites. In addition, some of the websites and postings have included advertising content, apparently generating advertising revenue or other valuable consideration. *See LFG, LLC v. Zapata Corp.,* 78 F. Supp.2d 731, 736-37 & n.7 (N.D.Ill. 1999) (finding internet portal operator providing access to other websites and posting advertising content was engaged in commercial activity). Ms. Iacovelli has also been motivated in part by non-commercial goals, but this does not affect her trademark transgressions. *Gideons International, Inc. v. Gideon 300 Ministries, Inc.,* 94 F.Supp.2d 566, 577 (E.D.Pa. 1999) ("The non-profit or non-business character of the parties does not affect the proper trademark analysis.").

The misuse of Dr. Eppley's trademarked name, furthermore, has amounted in some instances to virtual identity theft. The creation of internet sites with names such as "barryeppleyplasticsurgeon.com" and "barry-eppley.owndoc.com," the undertaking to create a series of "Eppley sites," and the appropriation of Dr. Eppley's name and

likeness in social network and other websites demonstrate a deliberate effort to attract internet users to the websites controlled by Ms. Iacovelli and her associates and to create the false impression that they are websites and pages created or authorized by Dr. Eppley.

Such misleading misappropriation amounts to a "passing off" in violation of Section 43(a). *See* 15 U.S.C. §1125(d) (prohibiting cyper-piracy by use of a domain name confusingly similar to a name that is trademarked or famous); *id.,* § 43(d)(1)(B)(i)(V) (in determining bad faith, court may consider intent to divert consumers and harm goodwill of trademark holder, either for commercial gain or with intent to tarnish or disparage).

*Diversity Jurisdiction - State Law Claims.* Dr. Eppley also asserts claims under Indiana law for defamation, trade disparagement, harassment, and false-light publicity.

Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ratcliff v. Barnes,* 750 N.E.2d 433, 436 (Ind.Ct.App. 2001). To establish defamation, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Lovings v. Thomas,* 805 N.E.2d 442, 447 (Ind.Ct.App. 2004) (*citing Ratcliff,* 750 N.E.2d at 436). Each element has been established through the undisputed evidentiary record.

! Communications are considered defamatory *per se* when they impute to the plaintiff criminal conduct, a loathsome disease, misconduct in a person's trade, profession, office, or occupation, or sexual misconduct. *Trail v. Boys and Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 137 (Ind. 2006). Of course, a false statement of fact is required to impose liability for defamation. *Journal-Gazette Co., Inc. v. Bandido's, Inc.,* 712 N.E.2d 446, 457 (Ind. 1999); *Barlow v. Sipes,* 744 N.E.2d 1, 8 (Ind.Ct.App. 2001) ("In order to recover in an action for defamation, that which caused the alleged defamation must be both false and defamatory."). That requirement is fully established in the present case. Dr. Eppley performed a routine facelift of a kind he had performed many times before, the surgery went smoothly and without any problem or complication, and the evidence before the court establishes that he did not commit any medical errors. Ms. Iacovelli has not presented any competent medical evidence supporting her accusations against Dr. Eppley. To the contrary, she has admitted that other physicians who have examined her have routinely stated there is nothing physically wrong with her.

! The circumstances under which Ms. Iacovelli began and continues her campaign also show that she acted with malice, which exists when a defendant publishes a defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Shepard v. Schurz*

*Communications, Inc.,* 847 N.E.2d 219, 225 (Ind.Ct,App. 2006)(*citing* and *quoting New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)).

! Ms. Iacovelli posted extensive writings and videos on the internet. This constitutes publication for defamation purposes.

! Ms. Iacovelli's accusations that Dr. Eppley mishandled her surgery, committed malpractice and caused her to suffer serious health problems are demonstrably false. The accusations of malpractice are defamatory *per se*. *See Baker v. Tremco, Inc.,* 917 N.E.2d 650, 657 (Ind. 2009). If the communication in question is defamatory *per se,* damages are presumed even without proof of actual harm to the plaintiff's reputation. *Lovings,* 805 N.E.2d at 447; see also *Baker,* 917 N.E.2d at 657; *Glasscock v. Corliss,* 823 N.E.2d 748, 757-58 (Ind.Ct.App.), *transfer denied,* 841 N.E.2d 183 (Ind. 2005) (affirming award of $100,000 as presumed damages for defamation *per se*, and rejecting argument that only nominal damages may be awarded absent proof of special damages; fact-finder may conclude defamation *per se* "gave rise to presumed damages of a 'substantial' amount"). Additionally, patients considering plastic surgery routinely conduct internet searches in choosing a surgeon, and Ms. Iacovelli's publications have been successful in driving away potential patients. This damage to Dr. Eppley's reputation and practice is compensable. Dr. Eppley's lost revenues as a result of Ms. Iacovelli's internet publications has been in the tens of thousands of dollars, he loses approximately one or two patients a month as an identifiable result of those publications, and has incurred $2,000 to $3,000 per month of expense attempting to counteract Ms. Iacovelli's internet campaign above the baseline expenses he would otherwise incur for maintaining a website and conducting ordinary marketing.

Dr. Eppley has shown his entitlement to the entry of summary judgment as to his claim against Ms. Iacovelli for defamation.

Dr. Eppley's complaint alleges that Ms. Iacovelli has committed the tort of trade disparagement. This is a hybrid of defamation as applied to a business operation and the common law tort of unfair competition. *See Felsher v. University of Evansville,* 755 N.E.2d 589, 595-99 (Ind. 2001)(holding former professor's internet disparagement of university supported relief under a variety of tort theories). The basis for that claim, accordingly, is addressed in connection with both the defamation analysis and the claim under the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

Dr. Eppley claims that Ms. Iacovelli has committed the tort of false-light invasion of privacy. This tort is similar to defamation, but has a different reach: defamation reaches injury to reputation, while privacy actions involve injury to the plaintiff's emotions and mental state.

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if

7

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Lovings v. Thomas,* 805 N.E.2d 442 (Ind.Ct.App. 2004). The accusations that Dr. Eppley committed malpractice and caused Ms. Iacovelli serious long-term injuries are false and misleading. Those accusations would be highly offensive to a reasonable person. Based on this showing, Dr. Eppley is entitled to prevail as to his claim of false light publicity against Ms. Iacovelli. The ruling on this claim subsumes the resolution of Dr. Eppley's claim of harassment.

*Relief.* The preliminary injunction shall be made permanent and remain in effect until the entry of final judgment or until modified or terminated. The Lanham Act allows the owner of a registered trademark whose rights have been knowingly and intentionally violated to obtain injunctive relief to prevent further violations. 15 U.S.C. § 1116 (1982). In order to obtain a permanent injunction on a Lanham Act claim, "a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *L. & J.G. Stickley, Inc. v. Cosser,* 255 F. App'x 541, 543 (2d Cir. 2007) (quoting *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006)).

Injunctive relief is available and appropriate to require Ms. Iacovelli and those acting in concert with her to refrain from further violations of the Lanham Act, including violations noted in connection with issuance of the preliminary injunction. The injuries associated with these actions justify the award of permanent injunctive relief. *See Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 902-03 (7th Cir. 2001)(affirming grant of injunction in trademark case; "These type of injuries are presumed to be irreparable"); *Bosley v. WildWetT.com,* 310 F.Supp.2d 914, 930 (N.D.Ohio 2004)("it is well settled law that the prior restraint doctrine is inapplicable in cases where one's proprietary interests are at stake, such as infringements of copyright or trademark"). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 726 (3d Cir. 2004) (quotation and citation omitted).

Dr. Eppley is also entitled to damages for the wrongs Ms. Iacovelli committed against him. The Court will not at this time attempt to quantify those damages, but will do so prior to the entry of final judgment.

### IV. Conclusion and Further Proceedings

"'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999)(quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). Ms. Iacovelli has not met that burden. Dr. Eppley's motion for summary judgment (dkt 177) is **granted.**

The Lanham Act provides that in "exceptional cases" the court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Dr. Eppley, as

8

the prevailing party, may seek attorney fees for work associated with the Lanham Act. He shall have **through September 21, 2010,** in which to file a petition for such fees and submit further evidence as to damages.

Final judgment shall not issue at this time. Dr. Eppley shall tender the form of a proposed permanent injunction which is sought.

**IT IS SO ORDERED.**

Date: 08/17/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gary P. Price
gprice@lewis-kappes.com

Todd Arthur Richardson
trichardson@lewis-kappes.com

Joseph Peter Rompala
jrompala@lewis-kappes.com

Lucille Iacovelli
3 Deer Hollow Road
Forestdale, MA 02644

Rich Bergeron
141 Green Street
Abington, MA 02351