UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

DR. BARRY EPPLEY, MD, DMD,              )
                                         )
                    Plaintiff,          )
        vs.                              )    No. 1:09-cv-386-SEB-MJD
                                         )
ARLENE MULLEY, in her capacity as       )
 successor to Lucille Iacovelli,         )
                                         )
                    Defendant.          )

**Entry Assessing Damages and Awarding Attorney Fees,
Granting in Part Motion for Permanent Injunction,
and Directing Entry of Final Judgment**

As explained in this Entry, damages are assessed against the defendant, attorney fees are awarded, and a permanent injunction shall issue. With these matters resolved, the entry of final judgment is appropriate.

**Background**

Dr. Barry Eppley is a citizen of Indiana who has a medical practice in central Indiana. Lucille Iacovelli was a former patient of Dr. Eppley's and a citizen of the Commonwealth of Massachusetts. Invoking both the court's diversity and federal question jurisdiction, and seeking both injunctive relief and damages, Dr. Eppley sued Ms. Iacovelli for defamation, trade disparagement, harassment, false-light publicity, and violation of § 43 of the Lanham Act, 15 U.S.C. § 1125, through her allegedly false designation and description of fact. Ms. Iacovelli passed away in mid-2010.

Through its Entry of August 18, 2010, the court concluded that plaintiff Dr. Barry Eppley had shown his entitlement to the entry of summary judgment as to liability based on the following claims, *viz.,*:

! The claims of false representations and designations, including misleading misappropriation amounting to a "passing off," in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a)–"Ms. Iacovelli has utilized Dr. Eppley's name in tabs, links, websites and throughout her campaign of internet disparagement, with the conscious design of driving internet traffic away from Dr. Eppley's authorized websites and toward her own. Ms. Iacovelli and her associates have acted, at least in part, with a commercial purpose."

- The state tort claim of defamation.

- The state tort claim of trade disparagement.

- The state tort claim of harassment and false-light publicity.

*See Eppley v. Iacovelli,* 2010 WL 3282574 (S.D.Ind. Aug 17, 2010). In that same ruling, the court made the following findings regarding relief to which Eppley was or would be entitled: First, the preliminary injunction would be made permanent and remain in effect until the entry of final judgment or until modified or terminated. Second, Dr. Eppley is entitled to damages for the wrongs Ms. Iacovelli committed against him.

The Lanham Act provides that in "exceptional cases" the court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Dr. Eppley, as the prevailing party, seeks attorney fees for work associated with the Lanham Act.

On November 16, 2010, the court granted the plaintiff's motion to substitute, pursuant to Rule 25(a) of the *Federal Rules of Civil Procedure.* The court ordered the substitution of Arlene Mulley, the deceased defendant's sister and next-of-kin, because no estate had been opened for Ms. Iacovelli.

## Issues

The issues addressed here are what injunctive relief, if any, is appropriate under the circumstances, what damages should be awarded to Dr. Eppley, and what amount of attorney fees, if any, Dr. Eppley is entitled to recover. The resolution of these issues will permit entry of final judgment.[1]

## Discussion

*Damages.* Dr. Eppley has presented evidence of the economic impact on his business caused by the defendant's misconduct, a portion of which has been in lost revenue from prospective patients. Another element of damages consists of expenses Dr. Eppley has incurred in being required to utilize the internet and other media to mitigate the negative effects of defendant's wrongful actions on his medical practice. The costs incurred in this latter category are $2,000 to $4,000 per month.

The full economic impact of Lucille Iacovelli's wrongful conduct however, is not susceptible to precise measurement. However, because Dr. Eppley seeks damages well below any reasonable compensation for actual damages he has incurred, his prayer for

---

[1]The rulings herein do not conclude proceedings concerning the contempt of non-party Richard Bergeron. *See In re Bergeron,* 2011 WL 744667 (7th Cir. 2011); *Eppley v. Iacovelli,* 2010 WL 3341538 (S.D.Ind. Aug. 20, 2010). Bergeron shall be given notice of this Entry and the accompanying Judgment and Permanent Injunction.

$25,000.00 in damages can be, and shall be granted and will be granted without further particularized calculation.

*Attorney Fees.* Dr. Eppley is the prevailing party in this action. In "exceptional cases" the court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

Dr. Eppley seeks to recover his attorney fees associated with the Lanham Act claims. His unopposed petition for such fees properly separates that work from other fees generated in the case, documents the work performed, and seeks reasonable rates for the work performed. His request for attorney fees reflects the exercise of "billing judgment," as is proper. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002))(explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's adversary pursuant to statutory authority"). Specifically, Dr. Eppley seeks an award of fees only for those portions of the legal work performed for which fee-shifting is appropriate here. Dr. Eppley proposes that he be awarded one-third of his total fees of $50,176, to wit, a total of $16,725. We find this proposal to be reasonable in all respects, including the amount of time expended and the hourly rate of compensation sought.

Dr. Eppley's petition for attorney fees of $16,725 is therefore **granted.**

*Injunctive relief.* The Lanham Act allows the owner of a registered trademark whose rights have been knowingly and intentionally violated to obtain injunctive relief to prevent further violations. 15 U.S.C. § 1116 (1982). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. *See University of Texas v. Camenisch,* 451 U.S. 390, 392 (1981). A party seeking a permanent injunction must satisfy the following four factors before the district court may grant a permanent injunction: 1) The existence of irreparable injury (including a continuing and imminent threat of harm); 2) remedies at law are inadequate to compensate for that threat of harm; 3) whether the balance of hardships between plaintiff and defendant tips in favor of a remedy in equity; and 4) the public interest would not be disserved by a permanent injunction. *Monsanto Co. v. Geertson Seed Farms,* 130 S. Ct. 2743 (2010) (citing *eBay Inc. v. MercExchanges, L.L.C.,* 547 U.S. 388, 391 (2006)). This analysis was principally undertaken in our prior Entry in which we determined that a preliminary injunction should issue, *see Eppley v. Iacovelli,* 2009 WL 1035265 (S.D. Ind 2009). That conclusion is buttressed by the fact that Eppley has now prevailed in the case on the merits of his claims.

Dr. Eppley is entitled to permanent injunctive relief giving full and continuing effect to the Preliminary Injunction by preventing future infringements of the plaintiff's rights and interests relating to claims on which he has prevailed. The ongoing obstructive involvements of non-party Richard Bergeron provide ample basis for allowing the Preliminary Injunction to remain in effect. The known internet sites violative of the

Preliminary Injunction are inventoried in the plaintiff's August 9, 2010, report. The plaintiff is correct, moreover, that Mr. Bergeron has been anything but cooperative and compliant with regard to the restrictions imposed by the Preliminary Injunction. Indeed, he not only admits his defiance, he appears to delight in it.

Lucille Iacavelli is now deceased and her successor in interest has not carried on her sister's campaign. Mr. Bergeron's involvement, however, shows that the claim for injunctive relief is not moot. *See Chicago United Industries, LTD, v. City of Chicago,* 445 F.3d 940, 947 (7th Cir. 2006). Proof of this is shown by the fact that some internet postings in violation of the Preliminary Injunction remain in cyberspace.

The scope of the permanent injunction to which the plaintiff is entitled, however, is narrower than that of the Preliminary Injunction. Specifically, references to specific behavior by Lucille Iacovelli are no longer germane. The permanent injunction to which the plaintiff is entitled shall provide as follows:

> The Defendant, Arelene Mulley, in her capacity as successor to Lucille Iacovelli as Lucille Iacovelli, her agents, and those in active concert and participation with her or formerly in concert with Lucille Iacovelli, are hereby directed and enjoined as follows:
>
> 1. All postings on the internet, made by the Defendant, her agents, those in active concert and participation with her, and those who offered their services to Lucille Iacavelli for the purposes of publicity, intimidation, and/or harassment, at any website controlled or operated by the Defendant, her agents, those in active concert and participation with her, or those who offered their services to Lucille Iacovelli for the purposes of publicity, intimidation, and/or harassment, which were made subsequent to the initiation of this action of March 30, 2009, and which refer to:
>
> > a. the Plaintiff, Dr. Barry Eppley, MD, DMD;
> >
> > b. the Plaintiff's attorneys, either by specific name or by reference to the law firm of Lewis & Kappes, P.C., in ways that touch on or otherwise reflect the issues in this litigation; or
> >
> > c. the judicial officers assigned to this action in ways that touch on or otherwise reflect the issues in this litigation;
>
> shall be removed immediately; and
>
> > d. the Defendant shall likewise cease in all manner the issuance and/or distribution of emails and similar communications, whether by her or others, which convey or tend to convey or contain any communication, statement or content as described above.

2. The Defendant and all those who offered their services to Lucille Iacovelli as described herein--for the purposes of publicity, intimidation, and/or harassment--are directed to clearly and explicitly request, direct, instruct, and take all actions within their power in an effort to cause their agents, those in active concert and participation with them to:

    a. remove all postings identified above in Paragraph 1 above;

    b. cease making any further postings within the scope of Paragraph 1 above;

    c. remove any websites created after the initiation of this litigation within the scope of Paragraph 1 above and additional websites or domain names which use the Plaintiff's registered and protected name, or any part thereof, the names of Plaintiff's attorneys and Plaintiff's counsel's law firm, or any of the judicial officers assigned to this case; and

    d. refrain from making further postings on any existing or new website to the matters identified in Paragraph 1 above.

3. The Defendant, her agents, those in active concert and participation with her, and those who offered their services to Lucille Iacovelli as described herein--for the purposes of publicity, intimidation, and/or harassment–shall refrain from registering, establishing, or otherwise creating any new and additional websites, domain names, links, tags, or other devices which use the Plaintiff's registered and protected name, or any part thereof, as part of any effort to imitate the Plaintiff, redirect internet traffic from the Plaintiff's own websites, or otherwise drive internet traffic away from the Plaintiff's;

4. The Defendant, her agents, those in active concert and participation with her, and those who offered their services to Lucille Iacovelli as described herein--for the purposes of publicity, intimidation, and/or harassment–are restrained from issuing and/or distributing emails and similar communications, regardless of their origin, which convey or contain any communication, statement or content disparaging the Plaintiff's name, his business or his reputation associated with the claims asserted in this lawsuit;

5. The Defendant, her agents, those in active concert and participation with her, and those who offered their services to Lucille Iacovelli as described herein--for the purposes of publicity, intimidation, and/or harassment--are restrained from requesting, directing, instructing, or otherwise attempting to cause any other individual or third-party to perform any acts which they themselves are otherwise prohibited from taking by this Order.

The steps required above include contacting the operators of interactive computer services that operate, host, or otherwise control these websites, informing them of this order, and directing them to forthwith remove the websites, postings, or links. All such providers of services are **Ordered** pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to remove such websites, postings, or links upon being notified of this Order and being requested to do so.

The court expressly retains jurisdiction over this matter for the purpose of making any further orders necessary or proper to effectuate the purpose of the Injunction, to enforce the Injunction as provided by law, and to punish violations of the Injunction through its contempt powers. This Injunction shall bind the parties, their successors in interest, and all those whose conduct is enjoined herein.

## Conclusion

The rulings in this Entry resolve all claims against all parties. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 03/30/2011

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana